# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs August 24, 2010

## STATE OF TENNESSEE v. SCOTTY MACK GRIFFITH

**Appeal from the Blount County Circuit Court**
**No. C-18466    David Reed Duggan, Judge**

**No. E2010-00317-CCA-R3-CD - Filed March 10, 2011**

The Defendant, Scotty Mack Griffith, pled guilty to promotion of the manufacture of methamphetamine, a Class D felony, and to possession of methamphetamine, a Class A misdemeanor. See T.C.A. §§ 39-17-433, 39-17-418 (2010). He was sentenced as a Range II, multiple offender to six years' confinement for the promotion conviction and to eleven months, twenty-nine days' confinement for the possession conviction, to be served concurrently. On appeal, he contends that the trial court erred by imposing a sentence of full confinement. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee (on appeal), and Mack Garner, District Public Defender (at trial), for the appellant, Scotty Mack Griffith.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; Mike Flynn, District Attorney General; and Andrew Watts, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the Defendant's purchasing Sudafed with knowledge that it would be used to manufacture methamphetamine and his possessing methamphetamine. The record on appeal does not contain a transcript of the guilty plea hearing, but the record reflects that the Defendant entered his guilty pleas on November 23, 2009.

At the sentencing hearing, the State introduced the presentence report. The report states that on October 20, 2009, the Defendant purchased a box of Sudafed from a CVS pharmacy with knowledge that it would be used to manufacture methamphetamine. After purchasing the pills, the Defendant and two other persons were arrested when their car was stopped by the police. The Defendant asked Investigator Steve Blankenship to retrieve his wallet from the car, and Investigator Blankenship searched the Defendant's wallet before giving it to the Defendant. Inside the wallet, Investigator Blankenship discovered aluminum foil that contained approximately one-tenth gram of methamphetamine powder.

The Defendant testified that he was addicted to morphine and that he experienced withdrawal whenever he stopped using it. He said he met Danny Osborne and Ashley Johnson a week before his arrest. He said that he was experiencing withdrawal and that Mr. Osborne offered to give him two morphine pills if he would buy a box of Sudafed for Mr. Osborne. He said he agreed because he was "pill sick" and wanted to feel better. He said he rode with Mr. Osborne and Ms. Johnson to a CVS pharmacy in Blount County. He said he entered the store, purchased a box of Sudafed, and gave the box to Mr. Osborne. He said Ms. Johnson then entered the store and bought a second box of Sudafed. He said they began to drive home but were stopped by the police and arrested.

The Defendant testified that he was on probation in Campbell County at the time of his arrest. He said he was on probation because he pled guilty to forgery and theft in October 2008. He said that he reported to his probation officer and paid his fees for about six months but that he stopped because his life went "straight downhill" after he began injecting himself with morphine. He agreed he had a prescription for morphine while he was on probation but said he had to purchase additional morphine pills to supplement his prescription.

The Defendant testified that he obtained multiple felony convictions between 1988 and 1999 because he was homeless. He said he broke into buildings to find places to sleep and stole food to eat. He said he had stayed out of trouble from 1999 until 2008 because he got married in 1999 and "turned [his] life around." He agreed that he was sober until 2003 or 2004 when he was in a car accident and was prescribed morphine to treat his fractured back. He said that his wife became upset after his morphine use increased and that she left him when he refused to stop taking the pills. He said his wife was willing to resume their relationship if he stopped using morphine.

The Defendant testified that he was forty years old and that he dropped out of school after completing the ninth grade. He said that he was declared disabled in 1989 and that he had received disability payments since that time. He said that he had been using medication for three or four years to treat schizophrenia and bipolar disorder but that he stopped taking his medication when his wife left him about two or three months before his arrest. He said

that he had visited a psychiatrist in Williamsburg, Kentucky for nearly ten years but that he did not attend regularly and instead went when he "felt [he] needed it."

The Defendant testified that he went through severe withdrawal while in jail. He said he was currently sober and did not want to use morphine. He said this was the first time he had been sober in many years. He said that after his release from jail, he intended to attend Narcotics Anonymous meetings, avoid drugs, find employment, and earn his GED certificate. He said he also wanted to resume seeing his psychiatrist to resolve issues related to post-traumatic stress disorder and an abusive childhood. He said these issues contributed to his desire to use morphine.

The Defendant agreed that he had been on probation several times. He said that although he told judges in the past that he would stay out of trouble if he was placed on probation, he never intended to obey the law because he was a young drug addict who was "running wild." He said he violated his probation a couple of times as a result. He said that his current arrest gave him the opportunity to become sober and that he wanted to improve his life.

On cross-examination, the Defendant admitted that methamphetamine was found in his wallet after he was arrested. He said that he did not use methamphetamine and that he intended to trade the methamphetamine for morphine. He denied knowing anyone who made methamphetamine but admitted that he bought Sudafed for Mr. Osborne and that he "knew where it was going." He said that he did not consider his morphine use to be a problem before being arrested but that he now realized he had a "major" drug problem. He said he would be able to remain sober because he had a "solid foundation to start off with and a very good home plan." He conceded that his record did not demonstrate that he had a solid foundation or a good home plan. He agreed he had at least three prior felony convictions, including convictions for theft, burglary, and selling cocaine.

Diana Kutscher testified that she was the Defendant's mother. She said the Defendant was physically and sexually abused by his father when the Defendant was young. She said the Defendant's father allowed him to use marijuana, opium, and "crank" when the Defendant was young. She said the Defendant suffered from a learning disability, manic depression, and borderline personality disorder. She said she also suffered from manic depression and agoraphobia. She said that the Defendant thought more clearly when he took his medication and that he got into trouble whenever he stopped using his medication. She said she was willing to help ensure that the Defendant used his medications if he was willing to live with her friends near her home in West Virginia. She said that she made the Defendant an appointment to see her psychiatrist and that the Defendant would be able to attend rehabilitation classes.

The trial court found that the following enhancement factors applied pursuant to Tennessee Code Annotated section 40-35-114: (1) the Defendant had a previous history of criminal convictions and criminal behavior in addition to those necessary to establish the appropriate range, and (13) at the time the felony was committed, the Defendant was released on probation. See T.C.A. § 40-35-114 (2010). The trial court found that mitigating factor (1) applied because the Defendant's criminal conduct neither caused nor threatened serious bodily injury. See T.C.A. § 40-35-113 (2010).

The trial court denied an alternative sentence. In determining that confinement was appropriate, the trial court found that confinement was necessary to protect society by restraining the Defendant, who had a long history of criminal conduct, and that less restrictive measures had frequently and recently been applied unsuccessfully to the Defendant. The Defendant was sentenced as a Range II, multiple offender to six years' confinement for the promotion of the manufacture of methamphetamine conviction and to eleven months, twenty-nine days' confinement for the possession of methamphetamine conviction, to be served concurrently. The trial court requested that the Defendant be allowed to serve his sentence in the Department of Correction's Special Needs Unit.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d) and -402(d) (2010). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In conducting a de novo review, we must consider (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986).

Preliminarily, the State contends that the Defendant has failed to provide an adequate record for review. The State argues that the Defendant's failure to include a transcript of the guilty plea hearing in the record leaves this court unable to ascertain the facts and

circumstances surrounding the offenses. The Defendant has not responded to this argument. We agree with the State.

On appeal, the Defendant was required to prepare a record which conveyed a fair, accurate, and complete account of what transpired with respect to those issues that are the bases of the appeal. T.R.A.P. 24(b); State v. Ballard, 855 S.W.2d 557, 560 (Tenn. 1993). The 1989 Sentencing Act, as amended, requires a sentencing court to consider evidence received at the trial. T.C.A. § 40-35-210(b)(1). With a guilty plea involving a felony, the evidence supporting the plea and finding of guilt is usually submitted by stipulation. This court has considered the guilty plea hearing transcript to be vital to a de novo review and potential resentencing by this court as required by law. See State v. Keen, 996 S.W.2d 842, 844 (Tenn. Crim. App. 1999); see also T.C.A. §40-35-401. No matter how developed a record may appear, this court cannot know the full extent unless the guilty plea transcript is included. "In the absence of an adequate record on appeal, this court must presume that the trial court's rulings were supported by sufficient evidence." State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991); see also State v. Roberts, 755 S.W.2d 833, 836 (Tenn. Crim. App. 1988).

We note that the record contains a transcript of a hearing on November 13, 2009, which is labeled as the Defendant's guilty plea hearing. That transcript, however, only includes a hearing at which the Defendant affirmed his waiver of indictment and requested that the guilty plea hearing be reset for November 23, 2009. A transcript of the guilty plea hearing on November 23, 2009, is not included in the record. The Defendant's failure to provide this court with a complete record on appeal requires us to presume that the trial court's rulings were supported by sufficient evidence. The Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE